**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MEDICAL TECHNOLOGY ASSOCIATES II, INC.,[1]<br><br>     *Debtor.* | Chapter 11<br><br>Case No. 22-10534 (CTG)<br><br>Hearing Date: Jan. 24, 2023 at 2:00 p.m. (ET)<br>Obj. Due: Jan. 17, 2023 at 4:00 p.m. (ET) |

## REORGANIZED DEBTOR'S MOTION TO ENFORCE BINDING TERM SHEET

The above-captioned reorganized debtor (the "Reorganized Debtor" or "MedTech"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), that certain Binding Term Sheet, dated November 30, 2022 [Dkt. 231-1] (attached as **Exhibit A**, the "Binding Term Sheet"), and the *Order Granting Motion of Debtor for an Order Pursuant to Fed. R Bankr. P. 9019 and §§ 363 and 365 of the Bankruptcy Code Approving Debtors Settlement with Carl W. Rausch, World Technology East II, Limited, and New World Technology II, LLC* [Dkt. 260] (the "9019 Order"), hereby moves the Court (this "Motion") for entry of the attached order set forth at **Exhibit B** enforcing the Binding Term Sheet. In support of this Motion, the Reorganized Debtor states as follows:

### INTRODUCTION

1. After years of litigation and several months of negotiations, Carl Rausch and World Technology East II, Limited ("WTE2," and together with Mr. Rausch, the "Rausch Parties") and MedTech entered into the Binding Term Sheet on November 30, 2022, and this Court approved the agreement on December 21. *See* 9019 Order. However, as MedTech previewed for the Court during hearings on December 19 and December 28, the Rausch Parties have already breached the

---

[1] The last four digits of MedTech's U.S. tax identification number is 3760. MedTech's mailing address is 1176 Tourmaline Dr., Thousand Oaks, CA 91320.

Binding Term Sheet by failing to fulfill their contractual obligations. What is worse, the Rausch Parties appear to have agreed to perform under the Binding Term Sheet knowing that they could not do so, and repeatedly represented to MedTech and the Court that they could do so, knowing that was not true.

2. Specifically, the Rausch Parties have breached the Binding Term Sheet in four ways:

    a) They failed to make the Settlement Payment of $1 million by December 14, as required by Section 9 of the Binding Term Sheet. To date, the Rausch Parties have paid only 10% of that amount into escrow, despite several representations by Mr. Rausch and his counsel that Mr. Rausch was ready and able to make this payment.

    b) They have failed to provide adequate assurance of future payments to WPT Land LLP, the landlord of the Malvern Property (the "Landlord"), as required by Section 6 of the Binding Term Sheet, requiring MedTech to spend more time and incur more costs in connection with the Malvern Property, including paying January 2023 rent and related expenses.

    c) They have failed to work with MedTech in good faith to negotiate and execute a final settlement agreement that cleanly effectuates several transactions, as required by Section 26 of the Binding Term Sheet.

    d) They have failed to compensate MedTech for its reasonable attorneys' fees, costs and other damages incurred because of the aforementioned breaches, as required by Section 26 of the Binding Term Sheet.

3. On the heels of the Court's confirmation of MedTech's bankruptcy plan, MedTech seeks to expeditiously move on from the Rausch Parties. That was the whole point of the settlement. To that end, before returning to this Court, MedTech attempted to mitigate its damages and work with the Rausch Parties to cure their breaches. But the Rausch Parties, while acknowledging their failure to pay the Settlement Payment, have refused to cure and instead have

postured and failed to provide MedTech with the requisite assurance that they can and will fulfill their contractual obligations. MedTech therefore files this motion to enforce the Binding Term Sheet and recover the monetary damages and costs to which it is contractually entitled.

## JURISDICTION

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, paragraph 7 of the 9019 Order and sections XIV.1 and 16 of the Reorganized Debtor's confirmed *Second Amended Subchapter V Plan of Reorganization of Medical Technology Associates II, Inc*. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

5. The statutory predicates for the relief requested herein is section 105(a) of the Bankruptcy Code.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     The Binding Term Sheet

6. A primary reason that MedTech filed for bankruptcy was because of ongoing disputes with the Rausch Parties. Dkt. 3, ¶ 21. Less than a month after MedTech entered bankruptcy, it began negotiating a resolution with the Rausch Parties. The negotiations, like the disputes between the parties, were contentious and protracted.

7. At the same time, MedTech required a path forward in its bankruptcy process and undertook various efforts to emerge. MedTech proceeded to file a plan of reorganization and set a process for its solicitation and approval. MedTech also attempted to sell its primary lease in Malvern and the assets located at the Malvern Property. Failing that, MedTech filed a motion on appropriate notice and obtained approval to sell certain assets at auction. On November 3, 2022,

MedTech conducted a Court-approved auction to sell certain equipment. Dkt. 160, 175. The equipment was auctioned off through this process for gross proceeds totaling approximately $165,000. *See* Ex. C (Nov. 21, 2022 Hr'g Tr. at 12:23-24). On November 8, the Rausch Parties filed a motion to set aside the auction sales, arguing that they would have paid more for the equipment. *See* Dkt. 180, ¶ 18 ("The Debtor has the chance to receive more for the auction. Had Rausch been informed of the auction, the Debtor would have obtained significantly more for the sale of the assets. Rausch is willing to top the bids on the equipment and intends to participate in an auction if one is conducted on proper notice.").

8.  On November 21, Mr. Rausch doubled down on these representations. He testified under oath that he was "interested in participating in [the] auction," and that he "made offers to take over the facility [and] take the equipment . . . . for a million dollars." Ex. C (Hr'g Tr. 48:13-14; 48:19-20; *see also id.* 51:4-6). Based on this testimony, his counsel argued that Mr. Rausch "would have drove the price up . . . the testimony is clear that he would have driven that price up." Ex. C (Hr'g Tr. 70:7-11).

9.  On November 30, the parties executed the Binding Term Sheet with an effective date of November 28, and this Court approved the agreement on December 21, 2022 in the 9019 Order. As relevant here, the Binding Term Sheet:

- Releases all claims between MedTech and the Rausch Parties and requires the parties to dismiss all pending claims and counterclaims (§§ 10-13);

- Requires the Rausch Parties to provide the Landlord adequate assurance of future payments under the Malvern Lease, and relatedly for MedTech to assign the Lease with the Landlord to the Rausch Parties (§ 6);

- Requires the Rausch Parties to make a payment of $1 million into an escrow account maintained by Richard Furtek, the Subchapter V Trustee, by December 14, 2022 (§ 9);[2] and

- Requires the parties to work together in good faith to execute a final settlement agreement that incorporates all the terms in the Binding Term Sheet by December 16, 2022 (§ 9).

10. Consistent with the Binding Term Sheet, MedTech drafted a final settlement agreement and ancillary transactional documents contemplated in the Binding Term Sheet (*e.g.*, Intellectual Property Assignment, License Agreement, Lease Assignment, Bill of Sale), and sent them to the Rausch Parties' counsel on December 5, 2022. *See* Ex. D. Over the following week, the Rausch Parties' counsel repeatedly represented that Mr. Rausch was reviewing the final settlement agreement and that comments were forthcoming. *See id.* (Dec. 6, 9 and 12 emails from A. Peskin, without attachments). These representations were consistent with the parties' seemingly shared goal to expedite finalizing the settlement and closing out the bankruptcy by the end of the year.

### B. The Rausch Parties' Breaches of the Binding Term Sheet

11. The Rausch Parties have breached the Binding Term Sheet in four primary ways.

12. *First*, they have not made the $1 million Settlement Payment. On December 14, the day the payment was due, the Rausch Parties' counsel suddenly informed MedTech and Mr. Furtek that the payment would not be made, putting the Rausch Parties in breach of the Binding Term Sheet. The Rausch Parties then made a series of representations, all of which have been false.

13. As an example, on December 14, the Rausch Parties' counsel wrote:

---

[2] Mr. Furtek opened an escrow account for the benefit of the parties and obtained a bond to back the Settlement Payment. *See* Ex. F (Dec. 2, 2022 emails). The bond costs $2,000 per year, and the account earns interest at an annual rate of 2%. *See id.* MedTech agreed to pay the cost of the bond, and it will receive interest earned on monies held in the escrow account. *Id.*

1. It has taken him longer to get the money from his investors than he had originally expected. He received $100,000 today, but too late to make the wire transfer. He shall make it tomorrow.

2. He's expecting another $400,000 to $600,000 either by the end of this week or early next week. He will transfer that amount as soon as he gets it in.

3. He's going to need a bit more time on the final $300,000 to $500,000 but will deposit it as it comes in.

Ex. E. Contrary to those representations, however, the Rausch Parties transferred only $50,000 to Mr. Furtek's escrow account on December 16, 2022.

14. Similarly, on December 19, 2022, the Rausch Parties' counsel represented that (a) their clients will "fully fund Mr. Furtek's escrow to $1,000,000 by no later than January 22, 2022 [sic: 2023], and (b) "Mr. Rausch is prepared to immediately deposit an additional $100,000 into the escrow." Ex. G. But as of the filing of this Motion, the Rausch Parties have deposited only $50,000 more into the escrow, for a total of $100,000, a mere 10% of the Settlement Payment.

15. *Second*, the Rausch Parties have failed to negotiate and execute a final settlement agreement by December 16, as required by Section 26 of the Binding Term Sheet. MedTech sent a draft of the final settlement agreement to counsel for the Rausch Parties on December 5, and despite several representations that their comments were forthcoming, *see* Ex. D (emails from A. Peskin), the Rausch Parties have failed to provide comments or negotiate a final agreement. The final settlement agreement should be a formality because it simply incorporates the comprehensive terms in the Binding Term Sheet and effectuates the transactions therein. But the Rausch Parties inexplicably have not even attempted to negotiate and finalize the final agreement.

16. *Third*, the Rausch Parties have failed to provide the Landlord with adequate assurance of future performance. Section 6 of the Binding Term Sheet states: "[s]ubject to the Rausch Parties' provision of adequate assurance of future performance to the landlord and

approval of the Bankruptcy Court, MedTech shall assign the Malvern leasehold (the 'Lease') to the Rausch Parties." Ex. A.  Although the Rausch Parties represented on December 19 that they believe they are "very close with the landlord," Ex. G, they have failed to provide such assurance, and as a result MedTech has incurred additional legal fees and had to pay January 2023 rent and related expenses to the Landlord.

17.     *Fourth*, they have failed to compensate MedTech for its reasonable attorneys' fees, costs and other damages incurred because of the aforementioned breaches, as detailed below.

### C.     MedTech's Efforts to Cure Breaches and Mitigates Damages

18.     Because of the Rausch Parties' breaches and misrepresentations, MedTech sought clarity, certainty, and reimbursement of its out-of-pocket fees and costs consistent with the Binding Term Sheet.  In an email dated December 20, 2022, MedTech demanded that the Rausch Parties pay: (a) the remaining $900,000 of the Settlement Payment, at least in part, prior to January 22, 2023, consistent with the Rausch Parties' prior representations about their ability to pay; (b) all expenses relating to the Malvern Property for January 2023, including rent, utilities, CAM expenses, utilities, facilities maintenance, and cure payments; and (c) $7,500 for foregone interest as well as attorneys' fees and costs incurred to enforce the Binding Term Sheet, which at that time represented only a portion of MedTech's total damages caused by the Rausch Parties' breaches. MedTech sought only a portion of its fees and costs as a compromise, so that the parties would not need to incur additional fees and costs in filing a motion.  *See* Ex. H at p. 5-6 (Dec. 20, 2022 email from J. Levine).  In response to the Rausch Parties' questions about MedTech's attorneys' fees, MedTech provided a draft of undersigned counsel's time entries relating to the breaches through December 20, 2022, which at that time $9,564.00.  *See* Ex. I.  This did not include the time that MedTech's bankruptcy counsel spent to address the Rausch Parties' breaches.

19. Rather than compromise, the Rausch Parties deflected, postured, attacked MedTech's counsel's time entries, and refused to provide any additional information or comfort that the Rausch Parties will fulfill their obligations. *See* Ex. H at p. 2-5 (Dec. 20 and 21, 2022 emails from D. Tancredi); Ex. J (Dec. 22, 2022 email from A. Peskin, attaching Rausch Parties' mark-up of invoice). The Rausch Parties agreed to pay only a paltry $1,000 to compensate MedTech for harm directly caused by the Rausch Parties' breaches. *See id.* The Rausch Parties have likewise refused to make any of the payments relating to the Malvern Property for January, representing that they will reimburse MedTech later, which adds to the already large sum that the Rausch Parties owe MedTech. *See* Ex. K (Dec. 27, 2022 email from D. Tancredi). MedTech, in turn, fronted the payments to the Landlord and has not been reimbursed. *See* Ex. L (proof of MedTech's payment to Landlord).

## RELIEF REQUESTED

20. By this Motion, MedTech seeks entry of the order attached hereto as **Exhibit B** enforcing the Binding Term Sheet.

## BASIS FOR RELIEF

21. The Binding Term Sheet states: "[i]f a Party(ies) violates the Term Sheet by, among other things, failing to negotiate in good faith and execute a final settlement agreement, the other Party(ies) are entitled to (a) the reasonable attorneys' fees and costs incurred in enforcing the Term Sheet and (b) any losses incurred by such violation(s)." Ex. A, ¶ 26. The 9019 Order holds that this "Court shall retain jurisdiction to hear all matters arising from this Order, including, without limitation and notwithstanding anything to the contrary in the Binding Term Sheet, jurisdiction to enforce the Binding Term Sheet or any Formalized Agreement until the Settlement Payment is made in full." Dkt. 260, ¶ 7; *see also* Ex. A, ¶ 19 ("The Bankruptcy Court shall have jurisdiction to interpret and enforce the Term Sheet.").

22.     There is no question as to the Rausch Parties' liability because their breaches are clear and unequivocal – despite several representations that they were ready and able to make the Settlement Payment, obtain assignment of the Malvern Lease,[3] and finalize a comprehensive settlement agreement, the Rausch Parties have failed to do all of those things.

23.     The only issues for consideration in this Motion are (a) enforcing the Binding Term Sheet and (b) determining the amount of money the Rausch Parties owe MedTech for their breaches. MedTech is being harmed each and every day that the Rausch Parties fail to cure these breaches. The company is unable to assign the Lease to the Rausch Parties; it is unable to cleanly and efficiently effectuate the transactions contemplated in the Binding Term Sheet; and it is being deprived of all of the money that the Rausch Parties agreed to pay. MedTech therefore seeks an Order requiring the Rausch Parties to immediately comply with their contractual obligations and compensate the company for its losses, as follows:

a)      <u>Damages Relating to the Malvern Property</u>.  Although the Rausch Parties have already agreed to pay costs relating to the Malvern Property for January, they have failed to make those payments, requiring MedTech to front the money. *See* Ex. J (Dec. 22 email from A. Peskin); Ex. K (Dec. 27 email from D. Tancredi). To date, MedTech has paid $18,418.21 to the Landlord for rent and utilities, *see* Ex. L (proof of payment), and it owes additional monies, including CAM expenses under the Lease. These are damages directly caused by the fact that the

---

[3] The Rausch Parties do not dispute their breaches but have quibbled about their obligation to provide adequate assurance of future performance to the Landlord, seemingly arguing that the provision of adequate assurance is a condition to assignment, rather than a contractual obligation. But Section 6 of the Binding Term Sheet unequivocally places this burden on the Rausch Parties, and under Pennsylvania law (which governs the agreement), "conditions precedent are highly disfavored and will be construed against the one who seeks to avail himself of them." *Allegheny Intermediate Unit v. East Allegheny School District*, 203 A.3d 371, 376 (Pa. Cmwlth. 2019) (internal quotation marks and citation omitted). The Rausch Parties must provide this assurance to the Landlord, and it is shocking, given Mr. Rausch's representations about his willingness and ability to pay for MedTech's equipment and the lease assignment, that he has not yet complied with what typically is a mere formality.

Rausch Parties have failed to timely effectuate the transactions required by the Binding Term Sheet and failed to provide the Landlord adequate assurance of future performance to enable the assignment of the Lease.

    b)  <u>Interest on Settlement Payment</u>.  Mr. Furtek's escrow account provides interest at a rate of 2% per year.  *See* Ex. F (Dec. 2, 2022 email from Mr. Furtek).  The Rausch Parties were required to transfer $1 million into the escrow account by December 14.  To date, they have transferred only $100,000 and have represented that the remaining $900,000 will not be paid until January 22.  Assuming the Rausch Parties pay the balance on January 22, as they most recently represented to MedTech, they will owe $1,923.29, which represents foregone interest.[4]

    c)  <u>Attorneys' Fees and Costs</u>.  MedTech has already incurred substantial attorneys' fees because of the Rausch Parties' breaches.  Since December 14, 2022, when the Rausch Parties acknowledged that they would not timely comply with their obligations, undersigned counsel spent several hours discussing the breaches and preparing for the hearing on MedTech's motion to approve the settlement – a strange and unfamiliar posture to seek approval of an agreement that one party has already violated.  Undersigned counsel discussed, strategized about, and prepared for the possibility that the Rausch Parties may contest the binding nature of the agreement.  This possibility was very concerning, because the parties had worked for several months toward a settlement.  If not for the Rausch Parties' contractual breaches and the possibility that the Rausch Parties would attempt to renege on the agreement at the December 19 hearing, undersigned counsel would not have even attended the hearing.  The attorneys' fees incurred because of the Rausch Parties' breaches as of January 5, 2023, including the time spent drafting

---

[4] Annual interest at a rate of 2% on $900,000 is $18,000. The above amount equals 39 days of interest – from December 14, 2022 to January 22, 2023 – out of a 365-day year. If the Rausch Parties do not make the full Settlement Payment by January 22, MedTech will thereafter seek statutory interest at a rate of 6% per annum under Pennsylvania law, 41 P.S. § 202.

this Motion, is $15,198.00,[5] *see* Ex. M, and the amount of fees will be even higher than that because of additional time that MedTech will inevitably spend to further enforce the Binding Term Sheet unless and until the Rausch Parties fully comply with their contractual obligation and cure their breaches.

## NOTICE

24. Notice of this Motion will be provided to counsel for the Rausch Parties, the Office of the United States Trustee for the District of Delaware and any other parties that have requested notice in this proceeding.

---

[5] This amount includes only the attorneys' fees for MedTech's special litigation counsel through January 5, 2023. MedTech's bankruptcy counsel has also spent time addressing MedTech's breaches. MedTech does not at this time seek bankruptcy counsel's fees, but reserves the right to do so if the breaches are not cured in full by January 22, 2023.

**CONCLUSION**

25. To summarize, MedTech seeks closure and a complete break from the Rausch Parties as soon as possible. It has filed this Motion to protect its rights, carry out the terms in the Binding Term Sheet, and recover the out-of-pocket costs that it has and will continue to incur because of the Rausch Parties' breaches. For the foregoing reasons, MedTech respectfully requests that this Court grant its Motion and award it the reasonable attorneys' fees and costs incurred in attempting to enforce and remedy the Rausch Parties' breaches.

Dated: January 10, 2023
Wilmington, Delaware                    **BAYARD, P.A.**


*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 North King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Email: efay@bayardlaw.com
          dbrogan@bayardlaw.com
and

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
Matthew Hamermesh
Jason A. Levine
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200
Facsimile: (215) 568-0300
Email: mhamermesh@hangley.com
          jlevine@hangley.com

*Counsel to the Reorganized Debtor*