## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In Re:

Medical Technology Associates II, Inc.

Debtor.

Chapter 11

Case No.:  22-10534 (CTG)

## RESPONSE TO REORGANIZED DEBTOR'S MOTION
## TO ENFORCE BINDING TERM SHEET

World Technology East II, Inc. and Carl Rausch (collectively, "Rausch"), by and through their undersigned counsel, hereby files this response to the Reorganized Debtor's Motion to Enforce Binding Term Sheet (the "Motion"):

### INTRODUCTION

1.      The Reorganized Debtor ("MTA") shares the same goal as the Carl Rausch and World Technology East II, Limited (the "Rausch Parties") – to separate from MTA and go their separate ways. The Rausch Parties have been working to obtain the funds committed by third parties to pay the agreed upon $1,000,000 settlement amount (the "Settlement Payment"), but partly because of the extreme acrimony caused by MTA and its principals and the complex description of assets, such funds have arrived slower than previously contemplated. The Rausch Parties remain committed to completing this settlement and using MTA's uniquely designed manufacturing space to further the goals Mr. Rausch had in mind when he founded MTA.

2.      It is unfortunate that MTA's counsel and special counsel have resorted to mischaracterizations and bravado to seek to enforce a settlement agreement. The Rausch Parties have acknowledged that the escrow account was not funded on time but have continually attempted to provide reasonable time frames for when the escrow will be funded. MTA has

rejected these requests but then moved to approve the settlement agreement that it argued was breached.

3.      The Rausch Parties always supported entry of the order approving the settlement. They did not file an objection, nor did they voice to anyone, at any time, that they would oppose having the settlement approved. MTA's special counsel, Hangley Aronchick Segal Pudlin & Schiller, took it upon themselves to extensively prepare for an uncontested hearing and send two partners, in addition to MTA's normal bankruptcy counsel, to an uncontested hearing. MTA is now trying to charge back the Rausch Parties for the fact that MTA overstaffed its case. As explained in more detail below, the Court should not permit such behavior.

4.      The Rausch Parties understand that MTA has incurred some expenses as a result of them not funding the escrow as originally contemplated, but the "piling on" nature of the bills is unreasonable and such a high amount should not be permitted. The Rausch Parties would request an evidentiary hearing to determine the scope of the damages to the estate.

## ARGUMENT

5.      MTA asserts four separate breaches of the Binding Term Sheet:[1]

   a.   They failed to make the Settlement Payment of $1 million by December 14, as required by Section 9 of the Binding Term Sheet. To date, the Rausch Parties have paid only 10% of that amount into escrow, despite several representations by Mr. Rausch and counsel that Mr. Rausch was ready and able to make this payment.

   b.   They have failed to provide adequate assurance of future payments to WPT Land LLP, the landlord of the Malvern Property (the "Landlord"), as required by Section 6 of the Binding Term Sheet, requiring MedTech to spend more time and incur more costs in connection with the Malvern Property, including paying January 2023 rent and related expenses.

   c.   They have failed to work with MedTech in good faith to negotiate and execute a final settlement agreement that clearly effectuates sever transactions, as required by Section 26 of the Binding Term Sheet.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

    d.  They have failed to compensate MedTech for its reasonable attorneys' fees, costs and other damages incurred because of the aforementioned breaches, as required by Section 26 of the Binding Term Sheet.

6.  The Rausch Parties briefly respond to each of the allegations as follows, with more thorough explanations to follow:

    a.  The Rausch Parties acknowledge that the escrow was only partially funded on December 14, 2022 due to issues with receiving the funds from third parties outside the United States. The Rausch Parties are working diligently to obtain such funds and are committed to completing this transaction. The Rausch Parties made MTA aware of the fact that funds would not be paid into escrow before the December 19th hearing on the motion to approve the settlement agreement. MTA elected, with the Rausch Parties' support, to continue to move forward on an uncontested motion.

    b.  The Rausch Parties and the Landlord have an agreement in principle regarding adequate protection. One of the elements of adequate protection required by the Landlord is that the $1,000,000 escrow be funded in full. As stated above, the Rausch Parties are working toward meeting that requirement. It is hardly a second breach of the agreement to provide adequate assurance when the same issue – funding the escrow – is the sticking point with both parties. The Rausch Parties and the Landlord reached this agreement before the December 19th hearing. Any expenses incurred by MTA toward monitoring the adequate assurance issue is not caused by any breach of the Term Sheet, but as a normal consequence of a lease assignment.

    c.  The Rausch Parties and MTA have been negotiating toward a final settlement agreement since the agreement was completed. These negotiations were stymied by MTA's pressure and overinflated demands, but the Rausch Parties are still committed toward negotiating and executing a definitive settlement agreement.

    d.  While the Rausch Parties admit that MTA's estate suffered some harm, the demands MTA made are unreasonably. MTA seeks to hold the Rausch Parties liable for its decision to over-lawyer and over-staff this case. Neither should be permitted. Furthermore, with extent to the January 2023 rent, the Rausch Parties were willing to pay the rent directly over to the landlord, but MTA later demanded that it pay the funds earlier than needed and directly to MTA. The Rausch Parties remain willing to reimburse MTA for the rent that it expended.

*The Escrow Funding*

7.      The Rausch Parties admit that the escrow was not funded with the $1,000,000 prior to the December 14th hearing date. The Rausch Parties further admit that they would be liable to the estate for any compensable damages as a result of this failure to fund the agreement. However, this does not mean that the Rausch Parties should now be responsible for MTA's continual failure to properly staff its bankruptcy case.

8.      The Rausch Parties have informed MTA, on multiple occasions, that they were still committed to funding the escrow account and finalizing the settlement agreement. The Rauch Parties look toward resolving this case and using MTA's former facility for its intended purpose.

9.      Any argument about misrepresentation is improper. The Rausch Parties ran into unforeseen funding circumstances when they reached out to third parties. At the time any representations were made, however, the Rausch Parties believed in the accuracy of such statements. As is often the case, delays and unforeseen circumstances have caused minor delays in receiving the funds.

*Adequate Assurance*

10.      MTA takes issue with the fact that the Landlord has not immediately consented to the assignment and requires adequate assurance. Shortly after reaching the agreement in principle with MTA, the Rausch Parties and MTA started to discuss an adequate assignment agreement. Those parties reached an agreement in principle on December 19th, prior to the hearing on the motion to approve the settlement. One agreement is that the Rausch Parties fully fund the escrow. Once the escrow is fully funded, the Rausch Parties believe that they will be able easily able to meet the other adequate assurance demands such as establishing a rent reserve.

11.     There was no breach of the Binding Term Sheet with respect to adequate assurance. The assignee (the Rausch Parties) and the landlord negotiated adequate assurance. Such negotiations are typical and the Rausch Parties were under no obligation to accede to the first demand made by the Landlord. MTA suffered no damages related to adequate assurance and should not be entitled to be repaid for any legal fees attendant to the fictitious breach. Such fees were incurred because the parties were discussing adequate assurance and would have been incurred under any circumstance.

*Good Faith Negotiations*

12.     The Rausch Parties have been in discussions with MTA's counsel over the final documents to be executed. The Rausch Parties have provided the Intellectual Property Assignment and the License Agreement to MTA's counsel. The Rausch Parties have agreed to the dismissal of the district court cases and the adversary proceeding.  Those dismissals have all been filed.  Furthermore, the Rausch Parties have executed and filed a withdrawal of their proof of claim.

13.     The Rausch Parties are continuing to work toward a resolution of the final settlement agreement and expect to have it complete soon.

*Reasonable Attorneys' Fees*

14.     The Rausch Parties acknowledge that they will be responsible for paying reasonable attorneys' fees that are caused by the Rausch Parties' inability to fund the escrow. However, the fees requested are not reasonable and the Rausch Parties request that the Court hold an evidentiary hearing on the reasonableness of such fees.

15.     MTA argues that it had to prepare for the possibility that "the Rausch Parties may contest the binding nature of the agreement." However, at no point did the Rausch Parties ever

suggest that they would contest the nature of the Binding Term Sheet and the Rausch Parties did not file any objection to the settlement motion.

16.     Two of MTA's special counsel spent 11.2 hours preparing for an uncontested settlement approval motion where neither counsel presented on the actual motion before the court. MTA's former counsel, Michael Busenkell, offered Stan Mastil's testimony by way of proffer and addressed the Court with respect to the approval. Jason Levine, MTA's special counsel made a presentation to the Court whereby he accused the Rausch Parties of breaching the agreement and other accusations. Mr. Levine's testimony was irrelevant to the motion to approve the Binding Term Sheet. Mr. Matthew Hamermesh did not speak at the hearing.

17.     In addition, Mr. Levine billed 3.0 hours for his attendance and travel to and from the hearing on the motion to approve the Binding Term Sheet (where he provided no substantive input) and Mr. Hamermesh billed 5.3 hours for travel to / from and attendance at the same hearing (where he did not speak).

18.     The 19.5 hours billed for preparation and attendance at the 9019 hearing are excessive. MTA's primary counsel was fully equipped to handle the hearing and did not need two additional lawyers in the courtroom providing no substantive input.

19.     Additionally, MTA's special counsel spent 9.5 hours drafting this Motion, which is completely unnecessary given the repeated assertions that the Rausch Parties were working toward resolving this matter, funding the escrow, and finalizing this agreement. This Motion provides no benefit to the estate and only increases legal fees. The Rausch Parties are not attempting to renege on this agreement and are fully committed to moving forward. While the promise of funding the escrow was overly optimistic, the Rausch Parties have never waivered in their desire to move forward. MTA pushed the settlement motion knowing that the escrow was

not funded. It is wholly necessary to file a motion to enforce an agreement that all parties agree wants to be consummated. The Rausch Parties should not be forced to compensate MTA for their wasteful motion practice.

20.     MTA demands that it be compensated for interest charges that may have accumulated on behalf of Mr. Furtek's escrow account. The Rausch Parties did not agree that MTA's estate would have any entitlement to interest in any escrow account. The issue of the entitlement to the interest from the escrow was never raised with the Rausch Parties and had the escrow been funded on December 14th, there is no indication that MTA would have left those funds in the escrow account passed the date of approval of the Binding Term Sheet. As a result, MTA is not entitled to any interest payments. Furthermore, any discussion of statutory interest is post-judgment interest. Since there is no judgment, MTA has no rights to post-judgment interest.

21.     In order to determine the full scope of MTA's damages related to the failure to fund the escrow, the Court should convene an evidentiary hearing and make factual determinations regarding whether the fees were reasonable and actually a consequence of any breach of the Binding Term Sheet.

## CONCLUSION

22.     The Rausch Parties share MTA's desire to resolve their differences. The Rausch Parties are working to finalize the settlement and get the documentation of the sale in order. The Rausch Parties have never waivered in this approach and MTA's actions here only do not accomplish any goal but to distract the parties and waste estate resources. The Court, at very least, should convene a damages hearing and make factual findings regarding whether such expenses claimed as damages are reasonable.

WHEREFORE, Rausch respectfully requests that this Court enter an Order (i) denying the Motion or, in the alternative; (ii) scheduling an evidentiary hearing. .

Dated:  January 17, 2023

Respectfully submitted,

FLASTER/GREENBERG, P.C.

*/s/ Damien Nicholas Tancredi*

Damien Nicholas Tancredi (DE 5395)
1007 North Orange Street, Suite 400
Wilmington, DE 19801
(215) 587-5675
damien.tancredi@flastergreenberg.com

and

FERRARA LAW GROUP, P.C.
Aaron L. Peskin (pro hac pending)
Kevin J. Kotch (pro hac pending)
1 Holtec Dr., Suite G-102
Marlton, NJ 08053
Telephone:  (609) 571-3738
Fax:  (609) 498-7440
aaron@ferraralawgp.com
kevin@ferraralawgp.com

*Attorneys for Defendants, Carl W. Rausch and World Technology East II Limited*